Andrea L. Richard
State Bar No. 5-2848
THE RICHARD LAW FIRM, P.C.
P.O. Box 1245
290 E. Broadway, Suite 904
Jackson, Wyoming 83001
Tel. 307.732.6680
andrea@arichardlaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **DONNA CHAVEZ,** an individual, | **CIVIL ACTION NO. _____** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **LEWIS & LEWIS, INC.,** a Wyoming corporation; and | **DEMAND FOR JURY TRIAL** |
| **KILGORE COMPANIES, LLC,** a Wyoming limited liability company, | |
| Defendants. | |

**COMES NOW**, Plaintiff Donna Chavez, by and through her undersigned counsel, and for her *Complaint* against Defendants Lewis & Lewis, Inc. and Kilgore Companies, LLC, respectfully states and alleges as follows:

### NATURE OF THE ACTION - OVERVIEW

1.      Plaintiff Donna Chavez starts working for Lewis & Lewis, Inc., a division of Kilgore Companies, LLC, in August of 2015 as a Scale Operator at its facility in Rock Springs, Wyoming.

2.      Ms. Chavez is a dedicated employee.  She consistently demonstrates her skill and desire to learn more and advance at Lewis & Lewis.

3.     Almost as soon as she starts working for Lewis & Lewis, Ms. Chavez faces harassment.

4.     Such harassment continues the longer Ms. Chavez works for Lewis & Lewis and begins to involve several male employees and superiors of Ms. Chavez.

5.     Despite Lewis & Lewis and Kilgore's lack of a clear reporting mechanism, Ms. Chavez is motivated by the severe and pervasive nature of the harassment she is facing and continuously reports the harassment to fellow employees and superiors.

6.     Ms. Chavez' reports are frequently ignored, and her harassers are protected by representatives of Lewis & Lewis.

7.     When Ms. Chavez' reports finally make it to Lewis & Lewis' HR Department, no conclusive action is taken.

8.     Lewis & Lewis and Kilgore Companies lay off and subsequently fire Ms. Chavez in retaliation for her reports of sexual and national-origin-based harassment once it becomes clear that she will not stop reporting.

## FACTS

### Nation of Origin and Sex Discrimination

9.     Ms. Chavez is of Hispanic descent and is protected from discrimination motivated by her Hispanic heritage by Title VII.

10.     Ms. Chavez is a woman and is protected from discrimination motivated by her sex by Title VII.

11.     Despite these protections, Ms. Chavez was discriminated against by Kilgore Companies, Lewis & Lewis, and their representatives because she is a woman of Hispanic descent.

12.     Principally, Ms. Chavez was harassed again and again and forced to endure a pervasively hostile work environment.

13.     Additionally, Lewis & Lewis and Kilgore refused to assign certain tasks to Ms. Chavez because she is a woman. As but a few examples:

   a.  When Mr. Alexander saw Ms. Chavez driving the water truck, he told her that she should not do that because such a task was only for the male employees of Lewis & Lewis and Kilgore Companies.

   b.  Mr. Arnoldi made the same discriminatory comment to Ms. Chavez and Mr. Alexander frequently used Mr. Arnoldi's name when he prohibited Ms. Chavez from performing certain tasks because she is a woman.

14.     Further, Ms. Chavez was effectively denied a promotion and prohibited from advancing at Lewis & Lewis because of her national origin and sex.

15.     Ms. Chavez discussed with Luke Bankhead the possibility of her doing gradation and testing in addition to her duties as a scale operator. This presumably would entail a promotion for Ms. Chavez and an increase in pay. However, she was never given this promotion as a result of the discriminatory behavior, harassment, and retaliatory discharge perpetrated by Lewis & Lewis and Kilgore Companies.

16.     Finally, Ms. Chavez was paid less because of her sex.

## **Harassment**

17.     Ms. Chavez is a member of two protected categories under Title VII. She is of Hispanic descent and she is a woman.

18.     While working as a scale operator for Lewis & Lewis, a division of Kilgore Companies, from August of 2015 through April of 2019, Ms. Chavez was harassed, ridiculed,

defamed and demeaned by coworkers, supervisors, and other representatives of Lewis & Lewis and Kilgore Companies because of her national origin and sex.

19.     The harassment Ms. Chavez faced while at Lewis & Lewis was so pervasive that it substantially altered the conditions of her employment and created a hostile work environment.

20.     During the four and a half years, from August of 2015 until April of 2019 that Ms. Chavez worked for Lewis & Lewis, the Defendants failed to address the ongoing and often daily workplace abuse, humiliation towards, and illegal harassment of, Ms. Chavez.

21.     Ms. Chavez most often faced harassment from Lewis & Lewis employees Jerry Miller and Jack Alexander.

22.     **<u>Harassment from Jerry Miller</u>**.  Ms. Chavez first faced harassment from Lewis & Lewis/Kilgore representative Mr. Miller beginning in August of 2015, almost immediately after she was hired. As but a few examples of the harassment she faced from Mr. Miller:

   a.   On one occasion, Mr. Miller entered the office Ms. Chavez shared with another female employee of Lewis & Lewis and removed his shirt in order to show them that he shaved his whole body. Mr. Miller commented that he used to be a body builder, which is why he still shaves his body hair. Both Ms. Chavez and Ms. Perez expressed their discomfort, and Ms. Perez told Mr. Miller they did not wish to see him without his shirt on.

   b.   On or around August 14th, 2017, Mr. Miller came into Ms. Chavez' office and inappropriately commented on Ms. Chavez' family circumstances.

   c.   After mentioning that he knew she was divorced, Mr. Miller told Ms. Chavez, "If you're ever lonely, I'm here for you." Finding this comment inappropriate and unwelcome, Ms. Chavez responded that she was "just fine with everything."

Instead of respecting Ms. Chavez' clearly demonstrated wish to be left alone, Mr. Miller began to rub Ms. Chavez' shoulders without her consent. Ms. Chavez shrugged him off, again clearly and politely sending the message that his advances were inappropriate and unwelcome. Mr. Miller responded by calling Ms. Chavez a "bitch" and leaving the office.

d.  Following this event, Mr. Miller refused to talk to Ms. Chavez and began altering her reported hours in clear retaliation for her rejection of his harassment.

23.    **Harassment from Jack Alexander**.  Ms. Chavez additionally faced further harassment from Jack Alexander, another representative of Lewis & Lewis/Kilgore.

24.    Beginning when Mark Arnoldi was terminated and worsening in October of 2018, Mr. Alexander repeatedly harassed Ms. Chavez to the point where the conditions of her employment were altered, and she could no longer perform her work without facing some kind of harassment from Mr. Alexander.

25.    As but a few examples:

a.  Mr. Alexander constantly referred to Ms. Chavez as "gold digger" or "cowgirl," despite Ms. Chavez' repeated requests to be referred to by her name.

b.  Mr. Alexander consistently demeaned and belittled Ms. Chavez, at one point asking her if she "spread her legs for her sugar daddy."

c.  Mr. Alexander ignored Ms. Chavez' autonomy and attempted to assert power over her when he told her that when he drives the truck, he makes the rules. He additionally threatened her, saying he was going to get rid of her to keep Rick (another employee of Lewis & Lewis).

d.  Mr. Alexander made prejudiced and discriminatory comments, frequently refusing to do certain tasks because, "that's for the Mexicans."

e.  Mr. Alexander interfered with Ms. Chavez' work, consistently making her leave early on Fridays and prohibited her from operating the water truck.

f.  At times Mr. Alexander would drive up to Ms. Chavez when she was working in a truck with another employee and say, "let's just see if we can piss Donna off."

g.  On March 15, 2019 Mr. Alexander sent a text that refers to Ms. Chavez as a "fat miserable spic cunt, disgusting infected maggot fat hog."

h.  Finally, on April 15, 2019 Mr. Alexander called Ms. Chavez and told her she no longer had a job with Lewis & Lewis/Kilgore, despite the fact that he did not have the authority to terminate her.

26.  Ms. Chavez faced consistent harassment from Mr. Alexander to the point that she could barely go a day without him directing some comment or aggression towards her.

27.  The harassment Ms. Chavez faced was clearly motivated by both her status as a woman AND her Hispanic heritage, as evidenced by Mr. Alexander's text.

28.  The working environment was so pervasively hostile at Lewis & Lewis that Ricky Ackerman, a foreman for Lewis & Lewis, claimed he had to increase his dosage of anti-depressants and anxiety medication as Mr. Alexander's aggressive and bullying behavior affected him as well.

## Hostile Work Environment

29.  Ms. Chavez faced near-constant harassment and discrimination while working at Lewis & Lewis and Kilgore Companies.

30.     The harassment Ms. Chavez faced was so pervasive that she could not perform the work she was hired to do without facing abuse and interference from her harassers.

31.     Ms. Chavez was forced to work in a pervasively hostile work environment for over 5 years.

32.     Upon information and belief, a number of other female employees at Lewis & Lewis and Kilgore have been subjected to a hostile and abusive work environment where they have been harassed, ridiculed, and demeaned and denied a full and fair opportunity to do equal work.

33.     Further, upon information and belief, when these other female employees have asked for help and reported the sexual harassment and the unfair hostile and abusive work environment, they have been retaliated against and either fired, terminated, disciplined, or subjected to other adverse employment consequences as a result of reporting the sexual harassment.

34.     Additionally, despite harassing and bullying numerous Lewis & Lewis employees, Mr. Alexander remained at Lewis & Lewis thanks to the protection of Mr. John Arnoldi Sr., who ran the site at which Ms. Chavez worked and is a Vice President of Lewis & Lewis.

35.     Mr. Arnoldi not only protected Mr. Alexander from efforts to terminate him, he mocked Ms. Chavez' reports of sexual harassment and did not investigate them.

36.     Mr. Arnoldi himself at times contributed to the hostile work environment at Lewis & Lewis.  For example, on numerous occasions, Mr. Arnoldi required Ms. Chavez to provide her computer log in information to Mr. Ackerman, despite Mr. Ackerman being a convicted sex offender and prohibited from using any computer.

**Reporting**

37.     At all relevant times, Lewis & Lewis/Kilgore did not provide its employees, including Ms. Chavez, with a clear mechanism for reporting sexual harassment and discrimination.

38.     Nevertheless, Ms. Chavez reported the harassment she faced throughout her time with Lewis & Lewis.

39.     Ms. Chavez reported to fellow employees, supervisors, and Kilgore Company's HR Department.

40.     Specifically, Ms. Chavez reported to Luke Bankhead.  On one occasion, Ms. Chavez reported that Mr. Alexander was, "harassing [her] really bad."

41.     When Mr. Bankhead attempted to terminate Mr. Alexander, he was prevented from doing so by Mr. Arnoldi.

42.     Upon receiving her reports and being made to understand the pervasive nature of the harassment, Mr. Bankhead, on behalf of Kilgore/Lewis & Lewis recognized the seriousness of her reports by noting that he would have to talk with Salt Lake because Ms. Chavez had used the "H" word of harassment, and used his hands to put air quotes around the word "harassment" as he spoke.

43.     Mr. Bankhead supposedly contacted Joe Johnson and Justin Nelson in Kilgore's Human Resources Department.  Mr. Johnson and Mr. Nelson were supposed to interview Ms. Chavez, but did not come on the scheduled day, citing bad weather.

44.     Kilgore did not take any further action.  The investigation was not completed.

45.     Despite the lack of action by Kilgore, Ms. Chavez continued to report the harassment that was being heaped on her. As but a few examples:

    a.   Ms. Chavez reported to Mr. Arnoldi as he was the one in charge of the work site.

    b.   Ms. Chavez reported to Ricky Ackerman, who also suffered as a result of Mr. Alexander's behavior.

    c.   She reported to a fellow employee named Steve, who gave Donna pepper spray to protect herself from Mr. Alexander.

    d.   She additionally reported to Dave Long, who Jack Alexander bullied over and over.

    e.   Ms. Chavez also reported to Jake Tolhurst.  Jake promised to help Ms. Chavez and forward her reports.  Although Jake tried to share her reports with his superiors, Kilgore fired Jake.

46.    Ms. Chavez reported Mr. Miller's and Mr. Alexander's behavior throughout the course of her employment with Kilgore and Lewis & Lewis.  However, her reports were not taken seriously.  In fact, Mr. Arnoldi stepped in to ensure that Mr. Alexander kept his job and Ms. Chavez lost hers.

## Retaliation

47.    Ms. Chavez repeatedly engaged in protected opposition to Title VII discrimination as described above.

48.    Instead of addressing and correcting its abusive and hostile workplace, Lewis & Lewis/Kilgore began taking steps to force Ms. Chavez out of her job and retaliated against her for asking for help.

49.    The events in connection with Lewis & Lewis' and Kilgore's decision to terminate Ms. Chavez demonstrate that retaliation played a part in the decision to terminate Ms. Chavez.

a.  In approximately the late winter/early Spring of 2019, Ms. Chavez was laid off. She was told it would be for a few weeks as part of Lewis & Lewis' standard seasonal layoff and that she should plan on returning to work in March 2019. Ms. Chavez attempted to contact Mr. Arnoldi, her supervisor, during this time. Mr. Arnoldi repeatedly ignored Ms. Chavez' calls.

b.  On March 15th, 2019, Ms. Chavez attended the company's safety kickoff, where she asked Mr. Arnoldi when she would be returning to work. Mr. Arnoldi replied that she would have to wait a couple more weeks.

c.  At the same event, Ms. Chavez had an interaction with Mr. Alexander in which he demanded to see personal documents of hers and she refused. He reacted by sending her the text containing racial slurs and abusive language as described above.

d.  On April 14th, 2019, Ms. Chavez learned from a coworker that Mr. Alexander had been telling people she had been fired, when Ms. Chavez was still under the impression that she had her job and would be returning to work. Ms. Chavez texted Mr. Arnoldi to ask when she would be returning to work and Mr. Arnoldi did not reply.

e.  The next day, on April 15th, 2019, Ms. Chavez received a call from Mr. Alexander, who said, "Kilgore has made a decision to go in a different direction and you don't have a job."

f.  Ms. Chavez again attempted to contact Mr. Arnoldi to no avail.

g. Ms. Chavez then contacted Kilgore's HR Department and spoke to Jaimie in HR who could not identify why Ms. Chavez no longer had a job, despite still being on payroll.

h. Ms. Chavez additionally reached out to Justin Nelson, who was the HR representative that was supposed to contact her from earlier reports. He requested a letter detailing Ms. Chavez' allegations, which Ms. Chavez sent.

i. Having received the call from Mr. Alexander and being unable to contact Mr. Arnoldi, Ms. Chavez was effectively discharged by Lewis & Lewis and Kilgore Companies

50.   There is a clear causal connection between Ms. Chavez' reports and her effective termination.

51.   First, Lewis & Lewis/Kilgore led Ms. Chavez to believe she would be rehired in March of 2019.

52.   Second, as is standard practice, many people were rehired beginning in March of 2019, such as Linda Beauchamp and her daughter Trish Clark, Rick Schreiven, Diane Jennings and Angie Rosser. Ms. Chavez was not.

53.   According to Lewis & Lewis itself, all female and Hispanic employees who wanted to be rehired, were rehired, except Ms. Chavez.

54.   One scale operator who was terminated for taking a call while driving was rehired in November of 2019.

55.   Further, Lewis & Lewis kept Ricky Ackerman employed despite him being legally unable to operate the scales.

56.     Kilgore's own HR Department could not understand why Ms. Chavez no longer had a job with Kilgore, and Ms. Chavez herself stated in her letter to Mr. Nelson, "I honestly feel like if I had not brought up all the harassment, I would still have my job."

57.     In sum, by opposing and reporting the hostile and abusive work environment at Lewis & Lewis, Ms. Chavez engaged in protected opposition to discrimination.  Instead of helping her, Lewis & Lewis/Kilgore chose to terminate her as a result of her protected activity.

58.     This causal relationship is evidenced by Mr. Alexander's participation in the process by which Ms. Chavez was effectively discharged, by Mr. Arnoldi's refusal to speak with her, and by Lewis & Lewis' rehiring practices.

<u>**Lewis & Lewis/Kilgore had Knowledge**</u>

59.     Ms. Chavez sent the letter referenced above to Mr. Justin Nelson in the spring of 2019 (after April 14, 2019) detailing both the harassment she faced from Jerry Miller and Jack Alexander and her retaliatory discharge.

60.     The harassment to which Ms. Chavez was subjected, and that which she describes in her letter, includes but is not limited to unwanted physical contact, sexual innuendo, racial slurs, discrimination, threats, and racist remarks.

61.     Ms. Chavez' letter additionally documents that Lewis & Lewis/Kilgore was informed of its employees' behavior prior to Ms. Chavez' termination.

<u>**JURISDICTION AND VENUE**</u>

62.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217, to enforce the requirements of the Equal Pay Act of 1963, codified as Section 6(d) of the FLSA, 29

U.S.C. § 206(d), and pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

63.     Lewis & Lewis and Kilgore Companies employ more than 50 employees and are employers within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. (sometimes referred to as "Title VII").

64.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this case arises under federal law, specifically Title VII, the Due Process Clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983.

65.     Venue is proper in the District of Wyoming pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because Defendants' unlawful actions, including Defendants' unlawful retaliation, giving rise to Plaintiff's claims, occurred in this District.

66.     This Court has pendant jurisdiction over the state law claims contained herein.

67.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Wyoming.

## **PARTIES**

68.     Plaintiff Donna Chavez is an individual who lives in Rock Springs, Wyoming.

69.     Lewis & Lewis, Inc. is a Wyoming for-profit corporation, filing ID 1980-000185393.  Lewis & Lewis, Inc.'s principal address is 7057 W. 2100 S., West Valley City, UT 84128 and its mailing address is the same.  The Registered Agent is Corporation Service Company, 1821 Logan Ave., Cheyenne, WY 82001.

70.     Kilgore Companies, LLC is a Wyoming limited liability company, filing ID 2010-000589197.  Kilgore Companies, LLC's principal address is 7057 W. 2100 S., West Valley City,

UT 84128 and its mailing address is P.O. Box 869, Magna, UT, 84044. The Registered Agent is Corporation Service Company, 1821 Logan Ave., Cheyenne, WY 82001.

## ADMINISTRATIVE PROCEDURES

71.    More than thirty (30) days prior to the institution of this lawsuit, Ms. Donna Chavez filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and the Wyoming Department of Workforce Services, Fair Labor Standards, alleging violations of Title VII and the Equal Pay Act (EPA) and related discrimination by Lewis & Lewis and Kilgore Companies.

72.    The EEOC provided Lewis & Lewis and Kilgore with notice of the charge.

73.    Over one hundred eighty (180) days after Plaintiff filed her charge, the U.S. Equal Employment Opportunity Commission issued a right to sue notice authorizing this lawsuit, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated by this reference.

## LEWIS & LEWIS/KILGORE'S REFUSAL TO COMPLY WITH THE LAW

74.    **Nation of Origin Discrimination.**  Nation of origin discrimination involves treating someone unfavorably because she is of a certain national origin or because of personal characteristics associated with national origin.

75.    Ms. Chavez was consistently treated differently and degraded based on her national origin, Hispanic, and she received several comments from Mr. Alexander targeting her status as an individual of Hispanic descent.

76.    Lewis & Lewis and Kilgore violated the law when they allowed their representatives to harass a Lewis & Lewis employee because of that person's national origin.

77.    **Sex Discrimination.**  The law makes it illegal for companies to allow their employees to harass other employees, to make employment decisions (such as promotions) based

on sex, and to discriminate in work assignments based on sex. This means that it is illegal for Lewis & Lewis/Kilgore to make decisions about job assignments and promotions based on an employee's sex and to base assignment and promotion decisions on stereotypes and assumptions about a person's sex.

78.    As discussed herein, Lewis & Lewis/Kilgore illegally prohibited Ms. Chavez from advancing because she is a woman.

79.    As discussed herein, Lewis & Lewis/Kilgore illegally prevented Ms. Chavez from performing certain tasks because she is a woman.

80.    Finally, as discussed herein, Lewis & Lewis/Kilgore failed in their obligation to create a work environment free of sexual harassment.

81.    They failed to protect their employees and their right equal right to work and they failed to rectify the illegal hostile environment at their facility once they were made aware of it.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF – TITLE VII SEVERE AND PERVASIVE NATIONAL ORIGIN DISCRIMINATION AND HOSTILE WORK ENVIRONMENT – 42 U.S.C. § 2000(e)-2(a)

82.    The allegations contained in the foregoing paragraphs are incorporated herein by reference.

83.    Since Ms. Chavez was hired by Lewis & Lewis/Kilgore in August of 2015, Lewis & Lewis/Kilgore has engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2(a), by engaging in severe and pervasive harassment and creating an abusive work environment.

84.    Ms. Chavez is of Hispanic descent and protected by Title VII against nation of origin discrimination.

85.     Lewis & Lewis and Kilgore Companies discriminated against Ms. Chavez based on her national origin as described herein.

86.     The effects of the Defendants' practices, described above, have been to deprive Ms. Chavez of equal employment opportunities and otherwise adversely affect her employment status because of her national origin.

87.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Chavez.

88.     As a direct and proximate result of Lewis & Lewis/Kilgore's actions and inactions, Ms. Chavez has suffered, and will continue to suffer, pain and suffering, and extreme and severe mental anguish and emotional distress, and she has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms. Chavez is thereby entitled to general and compensatory damages in amounts to be proven at trial.

89.     As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. Chavez has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and has thereby incurred, and will continue to incur, legal fees and costs.  Plaintiff requests that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF – TITLE VII SEVERE AND PERVASIVE SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT – 42 U.S.C. § 2000(e)-2(a)**

90.     The allegations contained in the foregoing paragraphs are incorporated herein by reference.

91.     Since Ms. Chavez was hired by Lewis & Lewis/Kilgore in August of 2015, Lewis & Lewis/Kilgore has engaged in unlawful employment practices in violation of Section 703(a) of

Title VII, 42 U.S.C. § 2000(e)-2(a), by engaging in severe and pervasive sexual harassment and creating an abusive work environment.

92.     Ms. Chavez is a woman and protected by Title VII against sex discrimination.

93.     As described herein, Lewis & Lewis/Kilgore subjected Ms. Chavez to unwelcome conduct including severe and pervasive sexual harassment and an abusive working environment because she is a woman.

94.     The effects of the Defendants' practices, described above, have been to deprive Ms. Chavez of equal employment opportunities and otherwise adversely affect her employment status because of her sex, female, and her national origin.

95.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Chavez.

96.     As a direct and proximate result of Lewis & Lewis/Kilgore's actions and inactions, Ms. Chavez has suffered, and will continue to suffer, pain and suffering, and extreme and severe mental anguish and emotional distress, and she has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms. Chavez is thereby entitled to general and compensatory damages in amounts to be proven at trial.

97.     As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. Chavez has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and has thereby incurred, and will continue to incur, legal fees and costs.  Plaintiff requests that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM FOR RELIEF – TITLE VII COMPENSATION DISCRIMINATION – 42 U.S.C. § 2000(e)-2(a)**

98.     The allegations contained in the foregoing paragraphs are incorporated herein by this reference.

99.     Since Ms. Chavez was hired by Lewis & Lewis/Kilgore in August of 2015, Lewis & Lewis/Kilgore has engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2(a), by discriminating against female scale operators with respect to compensation, and Ms. Chavez in particular.

100.     Ms. Chavez occupied the same position as other, male, scale operators who were paid at a higher rate.

101.     The effects of the practices described above have been to deprive Ms. Chavez of equal employment opportunities and otherwise adversely affect her employment status because of her sex, female, and national origin.

102.     The unlawful employment practices complained of above were intentional.

103.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Chavez.

104.     As a direct and proximate result of Lewis & Lewis/Kilgore's actions and inactions, Ms. Chavez has suffered, and will continue to suffer, pain and suffering and extreme and severe mental anguish and emotional distress; Ms. Chavez has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms. Chavez is thereby entitled to general and compensatory damages in amounts to be proven at trial.

105.     As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. Chavez has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and has

thereby incurred, and will continue to incur, legal fees and costs.  Plaintiff requests that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF – VIOLATION OF THE EQUAL PAY ACT – 29 U.S.C. §§ 206(d)(1) & 215(a)(2)

106.    The allegations contained in the foregoing paragraphs are incorporated herein by reference.

107.    Since July of 2017, Lewis & Lewis/Kilgore has violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) & 215(a)(2), by paying female scale operator wages at a rate less than the rate at which male scale operators are paid.

108.    At all relevant times, Ms. Chavez, while employed by Lewis & Lewis/Kilgore, performed work substantially equal to that of male scale operators, considering the skills, effort, and responsibilities of the job.  At all relevant times, Ms. Chavez worked under conditions similar to male scale operators, except that Ms. Chavez was subjected to an extremely hostile work environment, as addressed below.

109.    At all relevant times, Lewis & Lewis/Kilgore paid Ms. Chavez at lower rates than her male counterparts.

110.    As a result of the acts complained of above, Lewis & Lewis/Kilgore unlawfully withheld and is continuing to withhold payment of wages due to Ms. Chavez.

111.    The unlawful practices complained of above were and are willful.

112.    As a direct and proximate result of Lewis & Lewis/Kilgore's actions and inactions, Ms. Chavez has suffered, and will continue to suffer, pain and suffering and extreme and severe mental anguish and emotional distress; Ms. Chavez has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms. Chavez is thereby entitled to general and compensatory damages in amounts to be proven at trial.

113.     As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. Chavez has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and has thereby incurred, and will continue to incur, legal fees and costs.  Plaintiff requests that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

**FIFTH CLAIM FOR RELIEF – RETALIATION AND/OR CONSTRUCTIVE DISCHARGE BECAUSE OF SEX – 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a)**

114.     The allegations contained in the foregoing paragraphs are incorporated herein by reference.

115.     In Ms. Chavez' case, beginning on or about August of 2015, Lewis & Lewis/Kilgore engaged in unlawful employment practices, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by retaliating against and constructively discharging Ms. Chavez because of her sex.

116.     By asking her supervisors and manger for help and by asking them to address and stop the hostile work environment and sexual harassment, Ms. Chavez engaged in protected activity and opposition to discrimination.

117.     After Ms. Chavez would report the abusive and hostile work environment and ask for help, the hostile work environment and harassment would continue and become worse. Lewis & Lewis/Kilgore through its representatives and otherwise would take materially adverse action towards Ms. Chavez by making the work environment increasingly hostile and abusive.

118.     There is a causal connection between Ms. Chavez' protected activity and opposition to the discrimination and the materially adverse action and escalating hostile work environment and harassment.

119.    The harassing and abusive actions by Lewis & Lewis/Kilgore continued to escalate.  In response to Ms. Chavez' reports, the hostile environment and sexual harassment worsened.

120.    At the time she was forced out and kept out of her job, Ms. Chavez was performing her work in a satisfactory manner.

121.    Because Lewis & Lewis/Kilgore failed to respond to employee reports of hostile work environment, harassment, and other conditions of employment, the working conditions became increasingly intolerable.

122.    The retaliation and work conditions at Lewis & Lewis/Kilgore in Rock Springs were sufficiently intolerable that a reasonable employee would have experienced them as retaliation.

123.    As a direct and proximate result of Lewis & Lewis/Kilgore's actions and inactions, Ms. Chavez has suffered, and will continue to suffer, pain and suffering and extreme and severe mental anguish and emotional distress; Ms. Chavez has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms. Chavez is thereby entitled to general and compensatory damages in amounts to be proven at trial.

124.    As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. Chavez has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant and has thereby incurred, and will continue to incur, legal fees and costs.  Plaintiff requests that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

**SIXTH CLAIM FOR RELIEF:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

125.     Plaintiff incorporates herein the allegations contained in the foregoing paragraphs of this Complaint by reference as if set forth fully herein.

126.     As set forth herein, Lewis & Lewis/Kilgore's conduct was extreme and outrageous;

127.     The actions and conduct of Lewis & Lewis/Kilgore and its agents, employees and representatives intentionally or recklessly caused Ms. Chavez to suffer severe emotional distress and harm; and

128.     As a result of the action and conduct of Lewis & Lewis/Kilgore and its agents, employees and representatives, Ms. Chavez suffered severe emotional distress.

129.     Lewis & Lewis/Kilgore and its agents, employees and representatives know that emotional distress would probably result from their conduct or they gave little or no thought to the probably effects of their conduct.

130.     Specifically, as a result of the hostile work environment, discrimination, sexual harassment, abuse and outrageous conduct by Lewis & Lewis/Kilgore and its agents, employees and representatives, Ms. Chavez experienced suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame and the like.

131.     Ms. Chavez' emotional distress was severe.  It was not mild or brief.  She experienced distress so substantial and lasting that no reasonable person should be expected to bear it.

132.     Several factors demonstrate that the conduct and actions of Lewis & Lewis/Kilgore towards Ms. Chavez were outrageous.

133.     Lewis & Lewis/Kilgore and those acting as its agents and representatives had greater power at the workplace than Ms. Chavez did.  By creating and enabling an abusive,

hostile and outrageous workplace, Lewis & Lewis/Kilgore and its agents and representatives abused their power over Ms. Chavez. Their power over Ms. Chavez enhanced their ability to do harm to Ms. Chavez.

134.    The unwelcome comments and offensive conduct to Ms. Chavez by Lewis & Lewis/Kilgore and its representatives and agents was harassment.

135.    Lewis & Lewis/Kilgore's conduct was further made outrageous by its retaliation towards her for opposing and reporting the sexual advances and hostile work environment.

136.    As set forth above, Ms. Chavez was subjected to repeated incidents and a four-and-a-half-year pattern of harassment and abuse.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Donna Chavez respectfully prays to this Court for the following:

A.    On Ms. Chavez' claim for Title VII Severe and Pervasive National Origin Discrimination and Hostile Work Environment, for a judgment ordering specific performance by Lewis & Lewis, Inc. and Kilgore Companies, LLC, and for a judgment against Defendants and in favor of Ms. Chavez for all of Ms. Chavez' direct and consequential damages, including all lost future wages and damages, in an amount to be determined by a jury, plus interest; and

B.    On Ms. Chavez' claim for Title VII Severe and Pervasive Sexual Harassment and Hostile Work Environment, for a judgment ordering specific performance by Lewis & Lewis, Inc. and Kilgore Companies, LLC, and for a judgment against Defendants and in favor of Ms. Chavez for all of Ms. Chavez' direct and consequential damages, including all lost future wages and damages, in an amount to be determined by a jury, plus interest; and

C.    On Ms. Chavez' claims for Title VII Compensation Discrimination and Violation of the Equal Pay Act, for a judgment ordering specific performance by Lewis & Lewis, Inc. and

Kilgore Companies, LLC, and for a judgment against Defendants and in favor of Ms. Chavez for all of Ms. Chavez' direct and consequential damages (back pay) in an amount to be proven at trial, plus interest; and

D.      On Ms. Chavez' claim for Retaliation and Constructive Discharge Because of Sex, for a judgment ordering specific performance by Lewis & Lewis, Inc. and Kilgore Companies, LLC, and for a judgment against Defendants and in favor of Ms. Chavez for all of Ms. Chavez' direct and consequential damages, including all lost future wages and damages, in an amount to be determined by a jury, plus interest; and

E.      On Ms. Chavez' claim for Intentional Infliction of Emotional Distress, for a judgment against Defendants finding that Defendants knowingly, purposefully, and intentionally inflicted emotional distress upon Ms. Chavez that caused harm to Plaintiff, and Plaintiff was damaged by Defendants' misconduct in an amount greater than and beyond her general, compensatory, and consequential damages to be proven at trial, as well as punitive damages in an amount sufficient to punish Defendants and to deter future conduct like that exhibited by Defendants, such that other persons will be deterred from such conduct as well as the Defendants; and

F.      Order Lewis & Lewis, Inc. and Kilgore Companies, LLC, to pay Ms. Chavez punitive damages for its malicious conduct or reckless indifference to Ms. Chavez' federally protected rights, as described above, in amounts to be determined at trial; and

G.      On all her claims, award Ms. Chavez compensatory damages, back pay, and front pay in an amount to be determined by the jury; and

H.      Grant injunctive relief; and

I.      Award attorney and expert witness fees as allowed by statute; and

J.      Award pre-judgment interest at the maximum legal rate; and

K.      Award interest on the judgment at the maximum legal rate; and

L.      Award costs of suit herein; and

M.      Grant such further relief as the Court deems necessary and proper.

## **JURY DEMAND**

Plaintiff, by and through her counsel, pursuant to Federal Rule of Civil Procedure 38, hereby requests that this matter be tried to a jury of six.

RESPECTFULLY SUBMITTED this 11th day of May, 2021.

THE RICHARD LAW FIRM, P.C.

_____/s/_____
Andrea L. Richard
Wyoming State Bar No. 5-2848
P.O. Box 1245
290 E. Broadway, Suite 904
Jackson, Wyoming 83001
Tel. 307.732.6680
Fax 307.200.4280
andrea@arichardlaw.com

*Attorney for Plaintiff*